[Cite as *In re M.S.*, 2023-Ohio-3911.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN RE: M.S.

:
:
:   C.A. No. 29828
:
:   Trial Court Case No. G-2020-004207-
:   0C,0G
:
:   (Appeal from Common Pleas Court-
:   Juvenile Division)
:

. . . . . . . . . . .

O P I N I O N

Rendered on October 27, 2023

. . . . . . . . . . .

GARY C. SCHAENGOLD, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Mother appeals from the trial court's judgment terminating her parental rights and awarding appellee Montgomery County Children Services (MCCS) permanent custody of her minor child.

{¶ 2} Mother argues that the trial court abused its discretion in granting permanent custody of her daughter to MCCS, that she had made significant progress on her case

plan, and that the agency should have considered seeking a second extension of temporary custody to allow additional time for Mother to reunify with the child.

{¶ 3} We conclude that the trial court's permanent custody findings were supported by the requisite clear and convincing evidence. Accordingly, the trial court's judgment will be affirmed.

## I.     Background

{¶ 4}  M.S. was born to Mother in October 2017; her father is unknown. In July 2020, MCCS became involved with M.S. and her family as a result of a referral related to the condition of Mother's home and a report that Mother left M.S., then two years of age, unsupervised for a time. In February 2021, temporary custody of M.S. was granted to Maternal Grandmother. In June 2021, another referral was made to MCCS when M.S. was found roaming the streets unsupervised, unclothed, without shoes, and wearing only a diaper. Maternal Grandmother was later charged with child endangering and, after a brief period in which M.S. was placed on a safety plan with a non-relative, in October 2021, MCCS received interim temporary custody of M.S. MCCS filed a motion for permanent custody in February 2022.

{¶ 5} At an evidentiary hearing on MCCS's motion for permanent custody of M.S. held on September 23, 2022, the only witnesses were the foster mother and the caseworker assigned to the family. Mother did not appear at the hearing, although she was represented by counsel. Mother did not present any witnesses at the hearing.

{¶ 6} Following the hearing, on May 12, 2023, the trial court awarded MCCS permanent custody of M.S., thereby terminating Mother's parental rights. Mother

appeals.

{¶ 7} A trial court's decision to terminate parental rights and grant permanent custody to an agency of the State must be supported by clear and convincing evidence. *In re L.C.,* 2d Dist. Clark No. 2010-CA-90, 2011-Ohio-2066, ¶ 14. Clear and convincing evidence is evidence which will produce in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). The evidence must be more than a preponderance, but it need not rise to the level of certainty that is required beyond a reasonable doubt in criminal cases. *Id.*

{¶ 8} In reviewing a permanent-custody decision, "we apply an abuse-of-discretion standard, and we will not disturb such a decision on evidentiary grounds 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.' " *In the Matter of T.S.,* 2017-Ohio-483, 85 N.E.3d 225, ¶ 6 (2d Dist.), citing *In re L.C.* at ¶ 14. The phrase "abuse of discretion" implies a decision which is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 9} Here, the trial court applied R.C. 2151.414(B), which provides criteria for awarding permanent custody, and found by clear and convincing evidence that the child could not and should not be placed with Mother in a reasonable time and that Mother had abandoned M.S. The trial court also found by clear and convincing evidence that an award of permanent custody to MCCS was in the child's best interest. In making these

determinations, the trial court applied R.C. 2151.011(C), which provides that a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than 90 days, regardless of whether the parents resume contact with the child after that 90-day period. It also applied R.C. 2151.414(E), which provides guidelines for determining whether a child can be placed with a parent within a reasonable time. Finally, the trial court applied R.C. 2151.414(D), which sets forth factors for determining whether an award of permanent custody is in a child's best interest.

{¶ 10} The trial court summarized the evidence presented at the hearing on the motion for permanent custody thus:

A case plan was developed for Mother. Mother's case plan objectives included: complete a substance abuse and mental health assessment and follow the recommendations; obtain and maintain appropriate housing and income; participate in parenting skill education; complete a parenting and psychological evaluation; visit with the child consistently.

Mother received referrals to multiple providers to complete a substance abuse and mental health assessment. Mother engaged in services through Mahajan Therapeutics in February 2021 where she was diagnosed with major depression and generalized anxiety, and was prescribed medication. Mother stopped her treatment in May 2021 and was non-compliant with her medication. There is no evidence of Mother

engaging in any mental health or substance abuse treatment since May 2021.

Mother received referrals to multiple housing agencies to assist in obtaining housing. Mother was evicted from her housing around November 2020. Mother then spent time residing (with) her grandmother. Mother obtained her own two bedroom apartment in March 2021. When the caseworker last viewed the apartment in October 2021, it was largely unfurnished other than Mother's bed, did not have a bed for the child, and did not have any kitchen appliances. Mother has not permitted the Agency to conduct any further home visits since that time.

Mother was referred to the Job Center for assistance in finding employment. Mother has reported having multiple different jobs including working at Kohl's Distribution, Fuyao, and Smokey Bones. As of September 2022, Mother reported that she was unemployed.

Mother was referred to the Agency's Celebrating Families program for parenting education in February 2021. Mother attended one session, then did not attend any further sessions. Mother was again referred to the Agency's program in September 2021, but refused to engage. Mother reported that she completed an online parenting class during the summer of 2022, but did not provide requested verification to the Agency.

Mother signed a release of information in April 2022 so that a parenting and psychological evaluation could be completed. Mother had

two appointments scheduled in August 2022 to complete the evaluation. Mother did not appear for either appointment and did not complete the evaluation.

Mother had regular conduct with the child while she was in the care of maternal grandmother. After the child went into Agency custody in October 2021, Mother only visited with the child at the Agency two times between October 2021 and January 2022. Mother then refused to attend further visits at the Agency, and believed that the Agency should instead transport the child to her for visits. Mother visited the child in-person one time in January 2022 in the foster mother's home. Mother has not had any further in-person contact with the child since that time. Mother did have some virtual contact with the child in August and September 2022.

The court finds that notwithstanding reasonable case planning and diligent efforts by the agency to assist Mother to remedy the problems that initially caused the child to be placed outside the home, Mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

{¶ 11} The court found that the child was abandoned, pursuant to R.C. 2151.011(C), since Mother had not had any contact with the child from February 2022 through July 2022, and determined that multiple factors existed requiring the court to find that M.S. could not or should not be placed with Mother in a reasonable amount of time. The court applied R.C. 2151.414(D), which sets forth factors for determining whether an

award of permanent custody is in a child's best interest and evaluated those factors.

{¶ 12} In addressing the statutory best-interest factors that it found applicable, the trial court reasoned that the child had been in the home of the foster mother since January 2022 and was bonded to the foster mother and her adult son. The court found that the foster mother was meeting all of the child's needs, including extensive therapies and medical appointments for the child's special needs, and that Mother had not been consistent in her contact with the child since October 2021. Mother had not had any in-person visits with M.S. since January 2022 and had had only limited virtual contact with her since July 2022. The court found that M.S. was too young to express her wishes and because of her special needs; she was largely non-verbal. The court found that M.S. had been placed in the temporary custody of her maternal grandmother in February 2021 and that she had been in the temporary custody of MCCS since October 2021. The court further found that M.S. was in need of a legally secure permanent placement which could not be achieved without a grant of permanent custody to MCCS. It found that Mother had failed to make significant progress on her case plan objectives, had failed to address or engage in mental health or substance abuse services, was not employed, the condition of her home was unknown, and she had not consistently visited with M.S. The court also found that M.S. was bonded to her foster mother, who was interested in adopting her.

{¶ 13} The trial court concluded:

After consideration of the factors under R.C. 2151.414(D), the Court finds that the State presented clear and convincing evidence that a grant of

permanent custody to the Agency is in the child's best interest. Placement with either parent is not possible within the reasonably foreseeable future. Mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. The child's father is unknown. The Guardian Ad Litem recommended that permanent custody to MCCS is in the child's best interests.

{¶ 14} On appeal, Mother argues that she had made significant progress on her case plan and that MCCS "should have considered seeking a second extension of temporary custody to allow additional time for Mother to reunify with the child with protective supervision services."

{¶ 15} Upon review, we see no error in the trial court's permanent-custody decision. Mother did not appear at the permanent-custody hearing. The record contains clear and convincing evidence supporting the trial court's finding that M.S. could not be returned to Mother within a reasonable time, that Mother had abandoned M.S., and that an award of permanent custody to MCCS was in the child's best interest. Although Mother had made sporadic progress toward some of the case-plan objectives, she lacked consistent and verified employment, was unemployed at the time of the last contact with Mother prior to the permanent custody hearing, and she lacked suitable housing. While a representative of MCCS was able to view Mother's home one time, the residence lacked furniture to meet the needs of M.S. and there were no appliances in the home. Thereafter, Mother refused to permit any representative of MCCS to view her residence. Mother failed to engage in mental health or substance abuse services and

had not completed the requested parenting program. Mother's failure to have contact with M.S. for a significant period of time formed the basis for the trial court's abandonment finding. M.S. has significant needs relating to speech and occupational therapy resulting from a diagnosis of autism that were being addressed by foster mother.

## II. Conclusion

{¶ 16} Based on the reasoning set forth above, we conclude that the trial court's permanent custody findings were supported by the requisite clear and convincing evidence. Accordingly, Mother's assignment of error is overruled.

{¶ 17} The judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . .


EPLEY, J. and LEWIS, J., concur.